IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-01207-MEH

CHRISTINE JO CARSTENSEN,

    Plaintiff,

v.

CAROLYN COLVIN, Acting Commissioner of the Social Security Administration,

    Defendant.

___

## ORDER
___

**Michael E. Hegarty, United States Magistrate Judge**.

    Plaintiff Christine Carstensen appeals from the Social Security Administration ("SSA") Commissioner's final decision denying her application for disability insurance benefits ("DIB"), filed pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401-433. Jurisdiction is proper under 42 U.S.C. § 405(g). The parties have not requested oral argument, and the Court finds it would not materially assist the Court in its determination of this appeal. After consideration of the parties' briefs and the administrative record, the Court the Court **reverses** the ALJ's decision and **remands** the matter to the Commissioner for further consideration.

## BACKGROUND

### I.  Procedural History

    Plaintiff seeks judicial review of the Commissioner's decision denying her application for DIB benefits filed on December 17, 2012, alleging a disability caused by multiple medical

conditions, with a disability onset date of October 1, 2008. [AR 75, 147, 198] Because Plaintiff applied for DIB only, she had to establish that her disability began before June 30, 2013, her date last insured. [AR 160] After the application was initially denied on May 8, 2013 [AR 89-95], an Administrative Law Judge ("ALJ") held a hearing on April 3, 2014, upon the Plaintiff's request [AR 28-74]. On June 20, 2014, the ALJ issued a written, unfavorable decision, finding Plaintiff had not been disabled from the alleged date of the onset of disability through the date she was last insured, because considering Plaintiff's age, education, work experience and residual functional capacity ("RFC"), there were jobs existing in significant numbers in the national economy that Plaintiff could perform, including some of her past relevant work. [AR 9-27] On April 8, 2015, the SSA Appeals Council subsequently denied Plaintiff's administrative request for review of the ALJ's determination, making the SSA Commissioner's denial final for the purpose of judicial review. [AR 1-6] *See* 20 C.F.R. § 404.981. Plaintiff timely filed her Complaint with this Court seeking review of the Commissioner's final decision. [Docket #1]

**II.    Plaintiff's Alleged Conditions and Medical Opinion Evidence**

Plaintiff was born on December 23, 1963, and was 45 years old on the alleged onset date, claiming disability due to a variety of physical ailments: partial knee replacement, arrhythmia, chronic neck pain, high blood pressure, migraines, asthma, nerve damage, muscle strain, anxiety, and Type 2 diabetes. [AR 147-48, 198] Plaintiff completed high school and some college, and had past relevant work as a medical biller, dog groomer, kennel attendant, trailer park manager, and auto line assembler. [AR 55-57, 195, 199] Plaintiff's medical records involve a wide variety of issues; however, Plaintiff's argument on appeal focuses only on three specific treating physician opinions

regarding cardiovascular disease, orthopedic/hand surgery, and internal medicine regarding heart disease, anxiety, and chronic pain. Opening Brief, docket #16 at 3, 5. Thus, the Court will focus only on those issues. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) ("We will consider and discuss only those of [plaintiff's] contentions that have been adequately briefed for our review.")

### A.   Eric Young, M.D. – Orthopedic and Hand Surgeon

In March 2011, Dr. Eric Young's treatment notes indicate Plaintiff had a history of bilateral knee pain and prior arthroscopic procedures. [AR 326] Dr. Young further observed small osteophytes along with joint narrowing, leading him to advise Plaintiff to do strengthening and stretching exercises. [AR 237] Soon after, Plaintiff received pain injections in both knees. [AR 328-31] In July 2011, Plaintiff had a partial knee replacement in both knees. [AR 325] Late that month, Plaintiff said pain had lessened and range of motion had improved. [AR 334] By January 2012, Plaintiff could fully extend her knees. [AR 338] Dr. Young's note in February 2013 stated that Plaintiff had some popping in her right knee, while her left knee was asymptomatic. [AR 340]

Dr. Young opined that Plaintiff could: lift less than 10 pounds; stand and sit for less than two hours each per day; and never stoop, crouch, or climb. [AR 449-50] He also noted Plaintiff would need to lie down often throughout the day and had a limited ability to reach, finger, push, pull, handle, and feel. [*Id.*] Finally, he indicated he thought Plaintiff would likely miss work more than four days per month. [AR 450]

### B.   Douglas Webster, M.D. – Internal Medicine Doctor

The medical record also provides treatment notes from Dr. Douglas Webster, Plaintiff's

internal medicine doctor. [AR 267-92, 476-92] Dr. Webster's treatment notes from March 2012 indicate Plaintiff was on medication for blood pressure, but she did not have chest pain or shortness of breath. [AR 291] In December 2012, Dr. Webster noted that "chronic pain may well be a detriment to full-time employment"; he thus had Plaintiff complete the disability paperwork, indicating he would review it to ensure he was in agreement. [AR 272] In March 2013, Dr. Webster's treatment note shows Plaintiff was doing well with her blood pressure. [AR 267] However, in November 2013, Plaintiff said she was experiencing chest pain; Dr. Webster advised she take her cardiologist's advice to reduce her estrogen use as it was contraindicated for heart problems, but Plaintiff did not go off the medicine because of concern for hot flashes. [AR 481, 487-88] Dr. Webster again signed disability forms, noting "I reviewed her disability forms and sign these with the majority of the forms filled out subjectively by her." [AR 481] At this appointment Dr. Webster also noted Plaintiff "had a heart attack recently in addition to angina requiring stents." [AR 482] In January 2014, Plaintiff again said at an appointment with Dr. Webster that she was disabled because of anxiety and a variety of aches and pains that kept her from sitting for more than one hour at a time. [AR 476]

Dr. Webster's two opinion forms (one in January 2014 and the other in March 2014) both indicated he found Plaintiff to be disabled. [AR 352-54-, 455-48] He indicated Plaintiff could sit for seven hours per day and stand and walk in combination for up to three hours. [AR 445-47] He said she had limitations in her ability to repetitively reach, handle, or finger. [*Id.*] He also indicated that she could never perform fine manipulation with either hand, lift more than 10 pounds, nor could she bend, squat, crawl, or climb. [*Id.*]

### C.    Randall Marsh, M.D. – Cardiovascular Disease, Interventional Cardiology and Internal Medicine Doctor

The medical record also includes treatment notes from Dr. Randall Marsh, Plaintiff's cardiologist. [AR 465-75] Records show Plaintiff had a heart attack in August 2013. [AR 394-99; 416-19] Later, she had surgery to place stents in her left anterior artery and right coronary artery to help with angina. [AR 355-56, 371-74, 421-23, 465-66] In February 2014, Dr. Marsh completed a functional capacity assessment form. [AR 342-43] He noted that "sustained activity is a problem," and he indicated most of the issues of disability are "orthopedic issues," except "pushing/pulling" are cardiac issues. [AR 343] He wrote: "Cardiovascular issues date from more than 10 years," also explaining that she had a heart attack in August 2013 and that "cath reports show significant CAD" (coronary artery disease). [*Id.*] He also emphasized that she has stents and suffers from "chronic significant stable angina." [AR 342]

Because of these issues, Dr. Marsh opined that Plaintiff can lift/carry less than 10 pounds on a frequent and occasional basis, stand/walk less than two hours, and sit less than two hours total during an eight hour workday. [*Id.*] He said the impairment affects her reaching, fingering, pushing/pulling, handling, and feeling. [AR 343] He also noted that she needs the opportunity to shift positions at will from sitting or standing/walking, will need to lie down two-to-four times a day, and her symptoms are "constantly" severe enough to interfere with attention and concentration required to perform simple work-related tasks. [AR 342-43.]

### IV.    Hearing Testimony

The ALJ held a hearing on April 3, 2014, at which her attorney had the opportunity to

question her. [AR 28-74] Plaintiff testified she has a high school diploma and has completed a year of college. [AR 34] She said she had previous part-time work experience as a dog groomer and kennel assistant, a job she left to have knee surgery in 2008. [AR 35] She told the ALJ she could no longer do that job because of pain that feels "like railroad spikes being driven through [her] knees" when she kneels, squats, or crouches – pain that has continued despite partial replacements in both knees. [AR 36] She also explained that she worked a full-time job at PetSmart from 2006-2007, which she quit because she was "diagnosed with a cardiac spasm and forced to go down to part-time status" where she could not lift more than 10 pounds at a time and could not work full-time. [AR 37] Plaintiff said she was told this by "Dr. Downs," a cardiologist who "did not send it any records." [*Id.*] According to Plaintiff, Dr. Downs' office apparently had no records of her being a patient at his office, Heart Center of the Rockies. [AR 38] However, prescription records indicate she was indeed a patient there at some point, which Plaintiff's attorney explained to the ALJ. [*Id.*] Next, Plaintiff noted she had held a billing/receptionist job at Big Thompson Medical Group prior to working at PetSmart. [AR 40] At Big Thompson, she sat six out of eight hours a day and lifted light objects such as files. [*Id.*] Before that, she also worked at Chrysler on an assembly line and at Sun Communities as the assistant manager at a mobile home community. [*Id.*]

The ALJ then asked Plaintiff about her cardiac issues. [AR 41] Plaintiff testified she had a heart attack in August 2013, but she said she has not done follow-up therapy because of its expense. [AR 42] She also said she has frequent heart spasms, for which she takes nitroglycerin. [AR 43] She said, however, that the primary reason she cannot work is because of nerve damage in her neck: "I live with a headache every single day of my life, and it can exacerbate at any time up to a full-blown

migraine." [AR 44] She then added that she also cannot work because her cardiac spasms occur and her "hands go numb," making it "hard to manipulate items or hold things," adding that she has knee problems, her "back is kind of twisted a little bit," and her "pelvis leans forward now permanently," making it hard to sit down or stand. [AR 44-45]

Plaintiff's attorney then questioned her, beginning with a discussion about her back issues. [AR 45] Plaintiff explained she had been in a car accident in 1997, which injured her back and has continued to cause her pain. [*Id.*] The attorney also noted Plaintiff's diabetes, which Plaintiff said causes dizziness and nausea. [AR 47-48] Plaintiff then discussed numbness in her legs and hands, adding that she struggles with standing, is "always unsteady" on her feet, falls over frequently, and bumps into furniture and walls when her knees and hips "give out." [AR 48] She said she can stand for only five minutes before needing to sit down or she loses her balance. [*Id.*] She testified she is able to walk 15 minutes without stopping and sit for 10 minutes without having to stand to alleviate pain. [*Id.*] She then said she needs to nap between 15 minutes and two hours in a day, especially if she has a cardiac spasm. [AR 50] She also explained she had stents put in her heart, but she said she still gets dizzy and comes "close to passing out" if she bends over as it "kinks" the blood flow, as she said a doctor described to her. [AR 52]

A vocational expert ("VE") also testified at the hearing. [AR 53-72] Plaintiff's counsel objected to the VE's testimony about the numbers of jobs that exist in the regional, local, and national economy, which the ALJ overruled. [AR 54] The ALJ posed the following hypothetical:

> Assume a person of claimant's age, education, work experience, who's able to perform the exertional demands of light work as defined by [SSA] regulations. Additionally, the person can occasionally climb ramps or stairs, can never climb

>  ladders, ropes or scaffolds; can occasionally kneel, crouch, or crawl; must avoid concentrated exposure to extreme cold, [] excessive vibration and [] unprotected heights. Based upon these limitations, can the individual perform any of claimant's past work as it was actually performed or as it is customarily performed []?

[AR 58] The VE responded that the medical billing work would still be able to be performed by such a person. Additionally, the VE said other jobs would comply with the hypothetical one, including a tanning salon attendant and a recreation aide. [AR 59] Next, the ALJ modified the hypothetical by reducing the exertional demand to sedentary, then asking the VE if such a person could still work as a medical biller. [AR 59, 61] The ALJ said yes, adding that other jobs available in the economy to such a person include optical final assembler and call out operator, as well as an appointment clerk or insurance clerk. [AR 60-61] When asked how much absenteeism an employer would tolerate in these jobs, the VE said one day a month. [AR 62-63]

The attorney then asked the VE if it would change her opinion about the medical billing job if she knew that Plaintiff was not certified to do medical billing. [AR 65] The VE said that would reduce the numbers for the base of jobs that would be available as it would "restrict the universe of possible jobs." [*Id.*] The VE also acknowledged that if Plaintiff was unable to deal with co-workers, supervisors, and the general public on even an occasional bases, the medical billing job would be precluded – but it would also make Plaintiff unsuitable for all jobs in the economy. [AR 65-66]

The ALJ allowed the record to remain open after the hearing for Plaintiff to submit additional medical records, which Plaintiff then did, and the ALJ considered. [AR 12, 32, 465, 476] The ALJ issued an unfavorable decision on June 20, 2014. [AR 9-27]

**LEGAL STANDARDS**

**I.      SSA's Five-Step Process for Determining Disability**

Here, the Court will review the ALJ's application of the five-step sequential evaluation process used to determine whether an adult claimant is "disabled" under Title II of the Social Security Act, which is generally defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(B); *see also Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

Step One determines whether the claimant is presently engaged in substantial gainful activity. If he is, disability benefits are denied. *See* 20 C.F.R. §§ 404.1520. Step Two is a determination of whether the claimant has a medically severe impairment or combination of impairments as governed by 20 C.F.R. §§ 404.1520(c). If the claimant is unable to show that her impairment(s) would have more than a minimal effect on her ability to do basic work activities, she is not eligible for disability benefits. *See id*. Step Three determines whether the impairment is equivalent to one of a number of listed impairments deemed to be so severe as to preclude substantial gainful employment. *See id.* If the impairment is not listed, she is not presumed to be conclusively disabled. Step Four then requires the claimant to show that her impairment(s) and assessed RFC prevent her from performing work that she has performed in the past. If the claimant is able to perform her previous work, the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520(e), (f). Finally, if the claimant establishes a *prima facie* case of disability based on the four steps as discussed, the analysis proceeds to Step Five at which the SSA Commissioner has the burden to

demonstrate that the claimant has the RFC to perform other work in the national economy in view of her age, education and work experience. *See* 20 C.F.R. §§ 404.1520(g).

## II.     Standard of Review

This Court's review is limited to whether the final decision is supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *See Williamson v. Barnhart*, 350 F.3d 1097, 1098 (10th Cir. 2003); *see also White v. Barnhart*, 287 F.3d 903, 905 (10th Cir. 2001). Thus, the function of the Court's review is "to determine whether the findings of fact . . . are based upon substantial evidence and inferences reasonably drawn therefrom. If they are so supported, they are conclusive upon the reviewing court and may not be disturbed." *Trujillo v. Richardson*, 429 F.2d 1149, 1150 (10th Cir. 1970); *see also Bradley v. Califano*, 573 F.2d 28, 31 (10th Cir. 1978). "Substantial evidence is more than a scintilla, but less than a preponderance; it is such evidence that a reasonable mind might accept to support the conclusion." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The Court may not re-weigh the evidence nor substitute its judgment for that of the ALJ. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (citing *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)). However, reversal may be appropriate when the ALJ either applies an incorrect legal standard or fails to demonstrate reliance on the correct legal standards. *See Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996).

## **ALJ's RULING**

At Step One, the ALJ found Plaintiff met the insured status requirements of the Social Security Act through June 30, 2013. [AR 14] At Step Two, the ALJ determined Plaintiff had the

following severe impairments: "status post bilateral partial knee replacement; degenerative disc disease with radiculopathy; obesity; and status post myocardial infarction." [AR 14]  The ALJ also considered evidence of reactive airway disease, hypertension, diabetes, and blurred vision/glaucoma, but the ALJ found thcondition not to be severe because they do not cause more than minimal impairment in Plaintiff's ability to perform work-related activities; he also found the conditions were not severe within the meaning of the SSR.  [AR 15-16]

At Step Three, the ALJ concluded Plaintiff did not have an impairment that met or equaled the severity of one of the listed impairments. [AR 17] The ALJ found Plaintiff had the RFC to perform light work but could only occasionally climb ramps or stairs and never climb ladders, ropes of scaffolds. [AR 18] He found she could occasionally kneel, crouch, or crawl. [*Id*.] She also needed to avoid concentrated exposure to cold, vibration, and unprotected heights. [*Id*.]

Specifically regarding the three medical opinions at issue in this appeal, the ALJ first provided the following about Dr. Marsh:

> In February 2014, Randall Marsh, MD., completed a medical statement regarding the claimant's ability to perform work activities.  He opined that the claimant would miss four days of work every month, that pain would constantly interfere with the claimant's ability to concentrate, that the claimant could never stoop, climb stairs, or crouch, she could occasionally twist.  Dr. Marsh opined that the claimant needed to lie down during the day two to four times, could walk about ten minutes at a time, sit or stand about five minutes at a time, and must walk around every fifteen minutes.  He opined that the claimant could lift less than ten pounds on an occasional basis.

[AR 21] The ALJ then described the opinion of Dr. Young:

> In February 2013, Eric Young, M.D., completed a report identical to Dr. Marsh's.  He opined that the claimant would miss four days of work every month, that pain would constantly interfere with the claimant's ability to concentrate, that the claimant could never stoop, climb stairs, or crouch, she could occasionally twist.  Dr.

11

> Young opined that the claimant needed to lie down during the day two to four times, could walk about ten minutes at a time, sit or stand about five minutes at a time, and must walk around every fifteen minutes. He opined that the claimant could lift less than ten pounds on an occasional basis. He also indicated that the claimant was limited in her ability to reach, finger, feel, handle, push and pull and had limits in seeing, kneeling, balance, crawling, and would need to elevate her legs.

[*Id.*] The ALJ gave both of the above opinions little weight as they "appear to be based solely on the claimant's subjective complaints and the treatment record does not support the limitations." [*Id.*] The ALJ explained that Dr. Young's own treatment notes, for example, indicate claimant could never climb stairs; however, he later suggested she do strengthening exercises including those involving steps. [*Id.*]

Regarding the third medical opinion at issue – that of Dr. Webster – the ALJ wrote as follows:

> In January 2014, Dr. Webster completed an assessment of the claimant's work function. He opined that the claimant could sit for seven hours in a workday, stand for two, and walk for one hour. He opined that the claimant would be constantly distracted by symptoms. He opined that the claimant would have 25% ability to grasp, 10% ability to push and pull bilaterally, and wrote that this opinion was based on the claimant's report that she had nerve damage. He opined that she could occasionally lift up to ten pounds, but never more. Dr. Webster opined that the claimant could never bend, never squat, never crawl, and could occasionally reach above shoulder level. He indicated that the opinion was based on the claimant's report. In February 2014, Dr. Webster's treatment notes indicated that the claimant had a relatively normal gait, a normal range of motion in both knees, the knees were both stable, and patellar tracking was normal. X-rays of the knees and wrists showed well-positioned patellofemoral arthroplasty with no loosening or failure and the wrist films were unremarkable. He advised the claimant to begin an aquatic exercise program.

[*Id.*] He did not indicate the weight he gave this portion of Dr. Webster's opinion. [*Id.*] In sum, the ALJ found "the above RFC assessment was supported by the objective medical evidence contained

in the record." [AR 22]

At Step Four, the ALJ determined Plaintiff was capable of performing past relevant work as a medical billing clerk, which would not require the performance of work-related activities precluded by Plaintiff's RFC. [*Id.*]  As a result, the ALJ concluded that Plaintiff was not disabled at Step Five of the sequential process and, therefore, was not under a disability as defined by the SSA at any time from October 8, 2008, the alleged onset date, through June 30, 2013, the date last insured. [AR 23]     Plaintiff sought review of the ALJ's decision by the Appeals Council on July 17, 2014 [AR 7], which was denied on April 8, 2015 [AR 1-5].  Plaintiff timely filed her Complaint in this matter on June 9, 2015.  [Docket #1]

## ANALYSIS

On appeal, Plaintiff asserts that the ALJ erred by failing to provide "good/specific/supporting" reasons for discounting the opinions of Plaintiff's treating physicians who are specialists in their fields. *See generally* Opening Brief, docket #16.  Plaintiff also argues the ALJ failed to provide a weight for Dr. Webster's opinion, a mistake that is reversible error.  *Id.* at 10.  Defendant counters that the ALJ provided an exhaustive review of the record, detailing specific citations that explained his reasoning, including questioning inconsistencies between each doctors' treatment notes and their conclusions, as detailed above.  Response, docket #18 at 8-10. Defendant also points out the ALJ correctly found that Plaintiff's activities of daily living belied her claims of disability.  *Id.* at 12-14.

"An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical

professional." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) (citing 20 C.F.R. § 401.1527(d)). The ALJ must "give consideration to all the medical opinions in the record" and "discuss the weight he assigns to them." *Mays v. Colvin*, 739 F.3d 569, 578 (10th Cir. 2014) (internal quotation marks omitted). The applicable regulations governing the SSA's consideration of medical opinions distinguish among "treating" physicians, "examining" physicians and "nonexamining" (or "consulting") physicians. *See* 20 C.F.R. § 416.927(c).

When assessing how much weight to give a treating source opinion, the ALJ must complete a two-step inquiry, each step of which is analytically distinct. *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). The ALJ must first determine whether the opinion is conclusive – that is, whether it is to be accorded "controlling weight" on the matter to which it relates. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003); *accord Krauser*, 638 F.3d at 1330. If the opinion is not supported by medically acceptable evidence, then the inquiry at this stage is complete. *Watkins*, 350 F.3d at 1300. However, if the ALJ "finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record ." *Id*. If not, the opinion is not entitled to controlling weight. *Id*. In contrast, if the medical opinion of a treating physician is well supported by medically acceptable evidence and is not inconsistent with the other substantial evidence in the record, an ALJ must give it controlling weight. *Sedlak v. Colvin*, No. 11-cv-01247-PAB, 2014 WL 717914, at *10 (D. Colo. Feb. 24, 2014) (citing 20 C.F.R. § 416.927(c)(2)).

If the opinion of a treating physician does not merit controlling weight or if there is no opinion by a treating physician, the ALJ must move to step two and consider the following factors

in determining how to evaluate other medical opinions in the record: length of the treating relationship, frequency of examination, nature and extent of the treating relationship, evidentiary support, consistency with the record, medical specialization, and other relevant considerations. *Id.* "An ALJ may dismiss or discount an opinion from a medical source only if his decision to do so is 'based on an evaluation of all of the factors set out in the cited regulations' and if he provides 'specific, legitimate reasons' for [the] rejection." *Id.* (quoting *Chapo*, 682 F.3d at 1291).

It is error for an ALJ not to adequately state and explain what weight he or she gives to medical opinions. *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004). The ALJ must give "good reasons" for the weight he or she ultimately assigns each medical opinion. *Watkins*, 350 F.3d at 1301. The ALJ's decision must be sufficiently specific to make clear to any subsequent reviewer the weight given to the medical opinion, and the reason for that weight. *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). Even though an ALJ is not required to discuss every piece of evidence, it must be clear that the ALJ considered all of the evidence. *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). "[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Id.* at 1010. Boilerplate language, unconnected to any evidence in the record, will not suffice to support an ALJ's conclusion. *Hardman v. Barnhart*, 362 F.3d 676, 679 (10th Cir. 2004). An ALJ may reasonably give less weight to a medical opinion that differs from that same doctor's notes. *See Newbold v. Colvin*, 718 F.3d 1257, 1266 (10th Cir. 2013).

Here, the ALJ provided explanations of the weight he assigned the medical opinions, giving

little weight to the opinions of both Dr. Marsh and Dr. Young. [AR 21] However he failed to indicate the weight he gave to Dr. Webster's opinion of Plaintiff's physical conditions.[1] [*Id.*] Beyond not indicating the weight – as he must have done per *Langley* – he also did not discuss many of the relevant factors the Tenth Circuit has directed in *Sedlak* to be considered and discussed by an ALJ in evaluating medical opinions in the record.  The ALJ did not discuss length of treating relationship, frequency of examination, nature and extent of the treating relationship, or medical specialization – all of which should have been considered in weighing these doctors' opinions.  The ALJ did consider the important factors of evidentiary support and consistency with the record, discounting the opinions on that basis.  But the Court agrees with Plaintiff that the ALJ's opinion is deficient in its lack of specificity in rejecting the opinions.  *See Chapo*, 682 F.3d at 1291. Plaintiff correctly points out that the ALJ's opinion does not discuss Dr Marsh's treating relationship or notes, nor does the ALJ opinoin provide any weight for Dr. Webster's physical analysis of Plaintiff. The ALJ's opinion thus lacks requisite specificity, failing to make clear to this Court the weight given to the medical opinion and the reason for that weight per *Oldham*.

Thus, the Court's review of the record in its entirety and its review of the ALJ's opinion shows the ALJ failed to conduct a thorough analysis based on substantial evidence and did not provide the weight for one doctor's opinion; as such, the opinion must be remanded for reconsideration.

---

[1] The ALJ also analyzed Dr. Webster's opinion regarding Plaintiff's mental condition, about which the ALJ indicated he gave no weight. [AR 22] However, the ALJ did not state the weight given to the physical functional assessment relevant to this case. [AR 21]

## **CONCLUSION**

In sum, the Court concludes that the ALJ failed to apply the correct legal standards in omitting the weight given to Dr. Webster's opinion regarding Plaintiff's physical conditions and, further, did not provide a thorough analysis of the reasons for giving Plaintiff's treating physicians little weight. Therefore, the decision of the ALJ that Plaintiff Christine Carstensen was not disabled during the time period, October 8, 2008, through June 30, 2013, is **reversed and remanded** to the Commissioner for further consideration in accordance with this order.

Dated at Denver, Colorado this 14th day of April, 2016.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge